IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                Plaintiff,<br><br>vs.<br><br>TRAVIS FORD,<br><br>                Defendant. | 4:22-CR-03067-JMG-CRZ<br><br>SENTENCING MEMORANDUM<br><br>47 U.S.C. § 223(a)(1)(C) – Threatening Use of a Telecommunications Device |

**UNITED STATES' SENTENCING MEMORANDUM**

In late 2021, Defendant—having co-opted his brother's Instagram account—used the account to post numerous threatening comments on profiles associated with multiple public figures. He was subsequently charged with, and agreed to plead guilty to, threatening Public Official 1 (an elections official). Threats to election workers such as Public Official 1 have become a problem of national significance, as discussed herein. These individuals should not face threats simply for doing their jobs.

For the reasons discussed below, a sentence of 24 months in prison for Defendant is sufficient but not greater than necessary to comply with the purposes outlined in 18 U.S.C. § 3553.

**I.    Factual Background**

Because the plea agreement (ECF No. 9) ("Plea Agreement") and the Revised Modified Presentence Investigation Report ("PSR") provide substantially identical, and highly detailed, information regarding the specific threats that constituted both the charged and relevant conduct here,[1] the government will provide a relatively brief overview of the Defendant's criminal

---

[1] In the Plea Agreement, Defendant agreed to a Stipulation of Facts. *See* Plea Agreement, Stipulation of Facts. Defendant also agreed that the stipulation "fairly and accurately describes the defendant's actions and involvement in the offense to which the defendant is pleading guilty." *Id.* at ¶ 5.

1

activities.

Between August 2021 and October 2021, Defendant—a resident of Lincoln, Nebraska—posted a series of threatening and menacing comments on Instagram profiles linked to public figures. *See* Plea Agreement, Stipulation of Facts at ¶¶ 2-3, 5; *see also* PSR at ¶¶ 15, 20, 45. He posted these comments using an Instagram account with the user name "d_h_mazer" (the "Mazer Instagram Account"). *See* PSR at ¶ 15. Defendant's brother had previously opened the Mazer Instagram Account in or about 2015, but Defendant subsequently obtained access to the account from his own cell phone. Defendant started using the Mazer Instagram Account no later than August 2021, uploaded a profile photo for the account that he discovered on the Internet, and began making posts on the account that he believed would not be traceable to him.

    A.    <u>Threats to Public Official 1</u>

Defendant's first threatening statements—which Defendant left as comments to a photograph posted on Instagram by Public Official 1, an elections official—began in August 2021. *See* Plea Agreement, Stipulation of Facts at ¶¶ 2-3. On or about August 8, 2021, Public Official 1 posted a photo on the official's personal Instagram account. On or about August 10, 2021, Defendant, using the Mazer Instagram Account, commented on the aforementioned Instagram post. *Id.* at ¶ 2. The post appears immediately below:



*Id.*

On or about August 20, 2021, Defendant again commented on that same post. *Id.* at ¶ 3. The second comment appears immediately below:



d_h_mazer commented: Your security detail is far too thin and incompetent to protect you. This world is unpredictable these days....anything can happen to anyone. 👴 19h

*Id.*

The Federal Bureau of Investigation ("FBI") subsequently commenced an investigation into the user of the Mazer Instagram Account, later identified as Defendant, and obtained a warrant for certain contents of the Mazer Instagram Account. That warrant established that Defendant had made a multitude of additional threatening comments on posts associated with the President's Instagram account and with Public Figure 1, a major technology company's CEO. *See* Plea Agreement, Stipulation of Facts at ¶ 5.

B.  Threats to the President

The Instagram materials obtained via the warrant revealed that, after making the posts to Public Official 1's Instagram account, Defendant made numerous additional threatening comments on an Instagram account associated with the President. Those comments included:

- "You'll be dead before Christmas." (September 15, 2021)
- "You'll be dead soon." (September 23, 2021)
- "Corrupt politicians will die soon." (October 4, 2021)
- "You and Kamala need to be put to sleep. Permanently." (October 4, 2021)
- "The sooner we start making these people stop breathing, the sooner they will know they mean nothing." (October 10, 2021)
- "We need to kill all swamp creatures. Including this one. Let's show them what will happen to future swamp rats." (October 12, 2021)

3

- "You'll be dead soon." (October 16, 2021)

- "Start killing these deep state actors. They are not people." (October 26, 2021)

- "Assassinate Biden and Harris. You'd be an American hero." (October 26, 2021)

- "Assassinate this entire regime." (October 31, 2021)

*Cf.* Plea Agreement, Stipulation of Facts at ¶ 5; PSR at ¶ 23.

   C. <u>Threats to a Technology Company CEO</u>

  As indicated above, the warrant materials also revealed that Defendant made additional comments on Instagram posts associated with Public Figure 1, a CEO of a major technology company. Those comments included:

- "You'll be dead soon." (September 27, 2021)

- "You're not untouchable [Public Figure 1]. You can bleed too and will soon." (September 27, 2021)

- "You'll be dead before you know it." (October 3, 2021)

- "You can't stop what's coming. Not even your kids are safe." (October 5, 2021)

- "It's time to blow up [Public Figure 1's company] headquarters and all facilities." (October 5, 2021)

*Cf.* Plea Agreement, Stipulation of Facts at ¶ 5; PSR at ¶ 23.

   D. <u>Defendant's February 2022 and June 2022 Interviews</u>

  In February 2022, after developing information that Defendant had used the Mazer Instagram Account to make the aforementioned comments, the FBI interviewed Defendant. In his initial interview, Defendant expressed familiarity with and/or some animosity toward each of these public figures and took what he characterized as "accountability" for posting the messages, but claimed that he was likely intoxicated and could not remember making the posts.

4

Subsequently, in June 2022, prosecutors and an FBI agent again interviewed Defendant. At that time, he took direct responsibility for each of the aforementioned posts and admitted that he recalled making the posts. Although he stated that he was intoxicated when he made the posts, he also stated that he had sufficient control of himself to have restrained himself from making the posts. Defendant expressed remorse and stated that "what [he] did was terrible."

II.     **The Court Should Sentence Defendant to 24 Months of Incarceration**

Defendant's offense merits a term of 24 months of incarceration, a term of imprisonment that would be sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. § 3553.

Defendant agreed to plead guilty to one count of violating 47 U.S.C. § 223(a)(1)(C), a statute that criminalizes, *inter alia*, "utiliz[ing] a telecommunications device . . . without disclosing [the user's] identity and with intent to abuse, threaten, or harass any specific person." *See* Plea Agreement at ¶ 2. In the Plea Agreement, the government proposed that the following guidelines apply:

| SENTENCING GUIDELINES CALCULATIONS<br>COUNT ONE<br>47 U.S.C. § 223(a)(1)(C) | |
|---|---|
| **Threatening Use of Telecommunications Device:** | |
| Base Offense Level (U.S.S.G. § 2A6.1(a)(1)) | 12 |
| More Than Two Threats (U.S.S.G. § 2A6.1(b)(2)(A)) | +2 |
| Public Official Victim (U.S.S.G. § 3A1.2(b)) | +6 |
| **Adjusted Offense Level** | 20 |

Plea Agreement at ¶ 9(a). With three points for acceptance of responsibility pursuant to U.S. Sentencing Guideline § 3E1.1, the government proposed that Defendant's applicable offense level was 17. *Id.* at ¶ 9(b). The government also indicated that Defendant was in Criminal History Category I. *Id.* at ¶ 9(c). The Probation Officer adopted each of these assessments. *See* PSR at ¶¶ 32, 34-35, 39. Accordingly, pursuant to the U.S. Sentencing Guidelines Sentencing Table,

Defendant faces a guideline sentence of between 24 and 30 months. Because the statutory maximum for a single violation of 47 U.S.C. § 223(a)(1)(C) is 24 months, however, *see* 47 U.S.C. § 223(a), the guideline sentence is 24 months. *See* U.S. Sentencing Guideline § 5G1.1(c)(1).

> A.   The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant (18 U.S.C. § 3553(a)(1))

First, the nature and circumstances of Defendant's offenses justify the 24-month period of incarceration the government seeks here.

The threats to Public Official 1 had a meaningful impact on Public Official 1, who expressed fear and safety concerns. *See* Plea Agreement, Stipulation of Facts at ¶ 4. Those concerns were very reasonable, in light of the terrifying nature of the statements. The threats to the President and to the tech CEO were no less frightening. *See id.* at ¶ 5. The October 12, 2021 comment on the President's Instagram ("We need to kill all swamp creatures. Including this one. Let's show them what will happen to future swamp rats.") is particularly egregious. The threats to the tech CEO even extended to the CEO's family ("Not even your kids are safe."). These statements exceed the bounds of legitimate discourse in America. They are true threats.

Defendant's conduct, moreover, does not consist of merely a single or even a small handful of threats. If there had only been one threat, the Sentencing Guidelines in fact may have called for a reduction in Defendant's offense level. *See* U.S. Sentencing Guideline § 2A6.1(b)(6) (providing for a four-level reduction in the offense level, so long as certain specific offense characteristics do not apply, where "the offense involved a single instance evidencing little or no deliberation"). Instead, Defendant's conduct occurred over the span of multiple months. His over 15 threats were made over approximately three months, from mid-August 2021 to late October 2021.

Relatedly, although the PSR correctly notes that "there is no information to suggest [Defendant] intended to act upon his threats," PSR at ¶ 24, and Defendant echoes that fact in his

6

own sentencing memorandum ("Def. Mem."), *see* Def. Mem. at 4, the "prohibition on true threats protects individuals from the *fear of violence and from the disruption that fear engenders*, in addition to protecting people from the possibility that the threatened violence will occur." *Virginia v. Black*, 538 U.S. 343, 360 (2003) (internal quotation marks, alteration, and citation omitted) (emphasis added). The absence of an actual intent to commit an act of unlawful violence is therefore legally irrelevant to the determination that the threats at issue here were true threats. *Id.*

Defendant's history, moreover, provides little explanation for this behavior. He has a loving relationship with his mother, his stepfather, his sister, and his fiancé. PSR at ¶¶ 45-47. Defendant is in good health. *Id.* at ¶ 48. He obtained a bachelor's degree and appears to have worked consistently since that time (up until his guilty plea in this matter). *Id.* at ¶¶ 51-54. He earned a good living. *Id.* at ¶¶ 53-54. Despite these privileges, Defendant chose to engage in this course of conduct.

> B. <u>The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense (18 U.S.C. § 3553(a)(2)(A))</u>

The Court should fashion a sentence here that accounts for the seriousness of an offense that, by its very nature, undermines the democratic process by striking fear into the hearts of those administering our elections. Given Defendant's repeated threats both to Public Official 1 and to other public figures, a meaningful sentence is necessary to promote respect for the law and provide just punishment commensurate with the harm occasioned by Defendant's conduct.

To the extent that Defendant seeks a departure or variance because his fear of vaccine mandates generated the anti-government sentiment that led him to make the threats here, the government respectfully disagrees that such a departure or variance would be appropriate. Defendant lived in a different state from Public Official 1, who could not in any way regulate his

7

activity or impact him personally. Even if Defendant did live in the state where Public Official 1 serves, Public Official 1 is an election worker, not a public health leader or an official positioned to otherwise exercise police or public health authority. And notwithstanding the reasons or motives for his actions, they do not excuse or in any way justify Defendant's true threats here.

    C.    <u>The Need for the Sentence Imposed to Afford Adequate Deterrence to Criminal Conduct (18 U.S.C. § 3553(a)(2)(B))</u>

Finally, as noted above, there is a genuine need for general deterrence here. Although the government does not currently have reason to believe that Defendant will commit similar offenses here in the future, threats to elections workers across the country are an ongoing and very serious problem. According to one recent survey, one in six election officials have experienced threats because of their job and 77 percent have said that they feel the volume of these threats has increased in recent years. *See Poll of Local Election Officials Finds Safety Fears for Colleagues — and Themselves*, Brennan Center for Justice, *available at* https://www.brennancenter.org/our-work/analysis-opinion/poll-local-election-officials-finds-safety-fears-colleagues-and (Mar. 10, 2022).

The U.S. Justice Department has created an entire task force dedicated to prosecuting such threats, the Election Threats Task Force. This was the first conviction obtained by the Task Force. The sentencing outcome in this matter may set the tone for sentences in other already-indicted and future Task Force cases, as well as in other non-Task Force cases involving threats to election workers. Individuals who might consider threatening elections officials, especially as the 2022 election season approaches, ought to be made aware of the serious consequences for doing so. And election workers deserve to know that those who threaten them will face meaningful penalties.

**III.**     **<u>Defendant Should Not Obtain a Departure or Variance</u>**

Defendant should not be entitled to a departure or variance. Defendant appears to argue

that he is entitled to a departure under U.S. Sentencing Guidelines §§ 5H1.5 (Employment Record), 5K2.12 (Coercion and Duress), or 5K2.20 (Aberrant Behavior). *See* Def. Mem. at 7-8.

Section 5H1.5 provides that a defendant's "[e]mployment record is not ordinarily relevant in determining whether a departure is warranted," but can be considered in setting conditions of probation or supervised release. Accordingly, this guideline does not provide a basis for a departure for purposes of determining Defendant's period of incarceration.

Section 5K2.12 provides that a court can grant a downward departure if the "defendant committed the offense because of serious coercion, blackmail or duress, under circumstances not amounting to a complete defense." But there is no evidence here of a "threat of physical injury, substantial damage to property or similar injury resulting from the unlawful action of a third party or from a natural emergency," U.S. Sentencing Guidelines § 5K2.12, which would be required for Defendant to take advantage of the "coercion" prong of this guideline. And there is no indication that Defendant was blackmailed into committing this offense, or that Defendant was subjected to any form of duress (defined as "a threat of harm made to compel a person to do something against his or her will or judgment," *Duress*, Black's Law Dictionary (11th ed. 2019)).

Finally, section 5K2.20—which provides that certain defendants may obtain a downward departure where the offense involved a single criminal occurrence of transaction and "(1) was committed without significant planning; (2) was of limited duration; and (3) represents a marked deviation by the defendant from an otherwise law-abiding life"—is inapplicable here. The Application Notes provide that "repetitious . . . behavior does not meet the requirements of" this guideline. *See* U.S. Sentencing Guidelines § 5K2.20, Application Note 2. Because Defendant's conduct occurred repeatedly over the course of three months, it was "repetitious" within the meaning of the Application Note and a downward departure based on this guideline would not be

9

appropriate. *See United States v. Bueno*, 443 F.3d 1017, 1023 (8th Cir. 2006) ("The offense must have been more than something out of the defendant's character; it must have been a spontaneous and thoughtless act.").

Neither would a variance be justified based on the two threats cases Defendant cited in his brief. *See* Def. Mem. at 12. In *United States v. Eugene Huelsman*, Case No. 21-CR-31 (N.D. Fla.), the defendant was convicted of leaving a single threatening voicemail after calling a Congressman's official office. *See* ECF No. 31-32, 49. That defendant's guideline sentencing range was 10-16 months, in part because he benefitted from the aforementioned four-point reduction for an offense "involv[ing] a single instance evidencing little or no deliberation." *See* U.S. Sentencing Guideline § 2A6.1(b)(6). The defendant received a probationary sentence. ECF No. 49. By contrast, here, Defendant engaged in a pattern of conduct that lasted over three months and his guideline sentencing range is more than double the low end of Huelsman's guideline range.

In *United States v. Frank Anthony Pezzuto*, Case No. 20-CR-287 (M.D. Fla.), the defendant was convicted of communicating three threats to do bodily harm to members of Congress over the course of approximately ten days. *See* ECF No. 125 at 1-2. His guideline sentencing range was calculated at 24 to 30 months in his PSR. ECF No. 126 at 12. Although the defendant was 73 years old and served in the Air Force during the Vietnam War (and had diagnosed mental and physical health problems), *see id.* at 1-2; *see also* ECF No. 126-1, the court sentenced him to 15 months in prison. ECF No. 133. Defendant, by contrast, is a young, healthy individual, whose circumstances do not meaningfully resemble those of Pezzuto.

Still, the government acknowledges that Defendant accepted responsibility for making the threats at issue here within days after being served with a target letter. As indicated above, he agreed to sit for an extensive interview during which he made broad admissions concerning his

10

activities without the protection of a proffer agreement. And he signed the plea agreement here on the day of that interview. In doing so, Defendant saved the government the time and expense of an indictment, and also avoided needlessly expending the resources of the grand jury.

### III. Conclusion

For the foregoing reasons, the United States respectfully requests that the Court impose on Defendant a sentence of 24 months, to be followed by a period of supervised release.

Dated: September 1, 2022                                   Respectfully submitted,

STEPHEN A. RUSSELL                                         COREY R. AMUNDSON
Acting United States Attorney                              Chief, Public Integrity Section
                                                           U.S. Department of Justice

By: *Tessie L. Smith*                                      By: *Jonathan E. Jacobson*
Tessie L. Smith                                            Jonathan E. Jacobson
Assistant United States Attorney                           Trial Attorney, Public Integrity Section
                                                           U.S. Department of Justice

**CERTIFICATE OF SERVICE**

    I hereby certify that on the 1st day of September 2022 I caused the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF System, which will then send a notification of such filing to all attorneys of record.

                                              */s/ Jonathan E. Jacobson*
                                              Jonathan E. Jacobson
                                              Trial Attorney, Public Integrity Section